FILED
2nd JUDICIAL DISTRICT COURT
Bernalillo County
2/13/2019 2:52 PM
James A. Noel
CLERK OF THE COURT
Patricia Serna

**STATE OF NEW MEXICO**
**COUNTY OF BERNALILLO**
**SECOND JUDICIAL DISTRICT COURT**

FREEMAN J. PALMER, individually and on behalf of
other similarly situated individuals,

       Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY;
STATE FARM FIRE AND CASUALTY COMPANY; and
STATE FARM GENERAL INSURANCE COMPANY;

       Defendants.

No.     D-202-CV-2019-01228

## CLASS ACTION COMPLAINT

1. Plaintiff Freeman J. Palmer, for himself and on behalf of the Class and Subclass

defined herein, brings this Class Action Complaint under Rule 1-023 NMRA to recover damages

from State Farm Mutual Automobile Insurance Company, State Farm Fire and Casualty Company,

and State Farm General Insurance Company (collectively "State Farm"), and states as follows:

### JURISDICTION AND VENUE

2. This Court has jurisdiction under Article VI, Section 13 of the New Mexico

Constitution.

3. Venue is proper under NMSA 1978, § 38-3-1(B).

### PARTIES

4. Plaintiff Freeman J. Palmer is, and was at all material times, a resident of Bernalillo

County, New Mexico.

5. Defendant State Farm Mutual Automobile Insurance Company is a foreign for-profit

corporation conducting business, including the sales and solicitations for the sales of insurance

policies, throughout the State of New Mexico.  Process is properly served on it via its registered agent, the Office of Superintendent of Insurance.

6.  Defendant State Farm Fire and Casualty Company is a foreign for-profit corporation conducting business, including the sales and solicitations for the sales of insurance policies, throughout the State of New Mexico.  Process is properly served on it via its registered agent, the Office of Superintendent of Insurance.

7.  Defendant State Farm General Insurance Company is a foreign for-profit corporation conducting business, including marketing and sale of insurance policies, throughout the State of New Mexico.  Process is properly served on it via its registered agent, the Office of Superintendent of Insurance.

8.  Defendants worked together as a joint venture to sell automobile insurance policies to New Mexico residents, including Mr. Palmer. They are jointly and severally liable for the acts and resulting damages described herein.

9.  Defendants publicly display the companies affiliated with State Farm (which self-identifies as "State Farm Mutual Automobile Insurance Company") on its website, Statefarm.com. The website lists the names of all Defendants.[1]

10.  In addition to and as a result of the above factual information, Defendants had an agreement to combine their money, property, time, resources, and sales, underwriting and claims adjusting services in the provision of insurance products and services.

## FACTUAL ALLEGATIONS

**Palmer purchased an underinsured motorist policy from State Farm.**

11.  In 2014 State Farm issued Palmer a motor vehicle insurance policy, which he had

---

[1] *See* https://www.statefarm.com/about-us/company-overview/company-profile/state-farm-companies

2

applied for and purchased. *See* Ex. 1, Palmer App.

12.     State Farm issued the insurance policy and provided him with a declarations page. Ex. 2, Palmer Declarations Page.

13.     To date, State Farm has issued numerous policies and declaration pages. ("Palmer Policies and Declaration Pages"). *Id.*

14.     The Palmer Policies provided liability coverage on one vehicle in the amount of $25,000 per person/$50,000 per occurrence. *Id.*

15.     The Palmer Policies also purportedly provided uninsured and underinsured motorist coverage in the amount of up to $25,000.00 per person/$50,000.00 per occurrence. *Id.*

16.     State Farm collected a premium of $70.88 for the uninsured and underinsured motorist coverage that State Farm purportedly offered for the sixth months from December 10, 2014 to June 10, 2015. *Id.*

17.     State Farm collected from Palmer premiums for uninsured and underinsured motorist coverage that it purportedly sold him since 2014.

**State Farm's application and policy misrepresented the true value of minimal-limits underinsured motorist coverage and failed to properly inform Palmer that the underinsured motorist coverage for which State Farm collected a premium was illusory.**

18.     State Farm's application and the Palmer Policies failed to properly inform Palmer about the offset described in *Schmick v. State Farm Mutual Automobile Insurance Company*, 704 P.2d 1092 (1985) ("the *Schmick* offset"), and did not meet Palmer's reasonable expectations of being properly insured in the event he sustained significant injuries.

19.     When Palmer purchased automobile coverage, State Farm did not properly inform him of how underinsured motorist coverage is illusory in the event of a covered occurrence involving an underinsured driver.

20.     State Farm failed to properly inform Palmer of the extremely limited scenarios in

which he might benefit from the purchase of minimum limits underinsured motorist coverage.

21.     State Farm failed to properly inform Palmer that he would most likely not benefit from paying a premium for minimal underinsured motorist coverage that was equal to the amount of a tortfeasor's liability coverage because, pursuant to the *Schmick* offset, Palmer's recovery of underinsured motorist benefits would be offset by the amount of the tortfeasor's liability coverage.

22.     The application and the Palmer Policies did not contain clear, unambiguous language regarding the effects of the *Schmick* offset.

23.     State Farm failed to properly inform Palmer about combined premium costs corresponding to the available levels of coverage and failed to offer Palmer a fair opportunity to reconsider the decision in order to select either a higher amount of liability and underinsured motorist coverage or to reject such coverage all together.

24.     State Farm's application and application process did not alert Palmer, nor make clear to the ordinarily and similarly situated insureds, the fact that the *Schmick* offset drastically and materially diminished payment of benefits arising from a covered occurrence under the policy for accidents involving minimal limits underinsured motorists.

25.     State Farm's application did not alert Palmer that he would be billed a premium for underinsured motorists coverage on a minimum limits policy, where there was no likelihood of him ever being able to recover the full amount of underinsured motorists coverage for which he was billed and a high likelihood he would be unable to collect any underinsured motorist coverage for which State Farm collected a premium.

26.     State Farm's application and policies and statements by State Farm and its agents misrepresented the true value of the illusory minimal-limits underinsured motorist coverage that it advertised and sold to Palmer and for which State Farm collected premiums.

## CLASS ACTION ALLEGATIONS

27.     This action is properly maintainable as a class action pursuant to Rule 1-023 NMRA. The Class is defined as follows:

> All persons (and their heirs, executors, administrators, successors, and assigns) from whom State Farm collected a premium for underinsured motorist coverage on a policy that was issued or renewed in New Mexico by State Farm and that purported to provide underinsured motorist coverage, but which effectively provides no underinsured motorist coverage ("UIM") and/or misleading UIM coverage, because of the statutory offset recognized in *Schmick v. State Farm Mutual Automobile Insurance Company*, 704 P.2d 1092 (1985).

28.     Excluded from the Class are all of Defendants' present and former officers and directors, "Referees" serving the Evaluation Appeal process proposed below, Class counsel and their resident relatives, and Defendant's counsel of record and their resident relatives.

29.     The proposed class and subclass definitions are precise, objective, and presently ascertainable, and it is administratively feasible for the Court to ascertain whether a particular individual is a member of the Class.

30.     The members of the Class are so numerous that joinder of all members of the Class is impracticable.

31.     Palmer's claims are typical of the claims of members of the Class and Subclass.

32.     Certification of the Class and Subclass is desirable and proper, because there are questions of law and fact in this case common to all members of the Class. Such common questions of law and fact include, but are not limited to:

a.      Whether State Farm breached contractual obligations owed to their New Mexico policyholders;

b.      Whether State Farm breached duties owed to New Mexican insureds under the implied covenant of good faith and fair dealing;

5

c.    Whether State Farm violated NMSA 1978, §§ 59A-16-1 to 30;

d.    Whether State Farm failed to disclose one or more material facts in connection with the marketing or sale of the insurance policies at issue;

e.    Whether State Farm misled or deceived their policyholders in connection with the marketing or sale of the policies at issue;

f.    How properly to construe State Farm's standard application forms and other standard form documents relative to the *Schmick* offset;

g.    What remedies are available to Palmer and Class Members in light of the answers to the foregoing questions; and

h.    Whether and to what extent there may be merit in any affirmative defenses that State Farm might claim.

33.    These common questions of law or fact common to members of the Class predominate over any questions affecting only individual members, and a class action is superior to all other available methods for the fair and efficient adjudication of the controversy. In this action:

34.    Common or generalized proof will predominate with respect to the essential elements of the nine claims at issue.

35.    The common questions of law or fact that pertain to the Class predominate over any individual questions and any individual issues do not overwhelm the common ones.

36.    If any member or members of the Class has an individually controlling interest to prosecute a separate action, they may exclude themselves from the Class upon receipt of notice under Rule 1-023(C)(2).

37.    The determination of the claims of all members of the Class in a single forum and in a single proceeding would be a fair, efficient and superior means of resolving the issues raised

in this litigation.

38.    Any difficulty encountered in the management of the proposed Class is reasonably manageable, especially when weighed against the impossibility of affording adequate relief to the members of the Class through numerous independent actions.

39.    The need for proof of Palmer's and Class members' damages will not cause individual issues to predominate over common questions. The amounts of losses can be efficiently demonstrated either at trial or as part of routine claims administration through accepted and court-approved methodologies with the assistance of court-appointed personnel, including Special Masters. Certain types or elements of damage are subject to proof using aggregate damage methodologies or simply rote calculation and summation.

40.    The particular common issues of liability and the quantum of punitive damages or ratio of punitive damages to actual harm, are common to Class Members no matter what type of harm or injury was suffered by each Class Member.

41.    State Farm has acted or refused to act on grounds generally applicable to all Class Members, thereby making appropriate injunctive relief and corresponding declaratory relief with respect to Class Members. Palmer seeks to establish the rights and obligations of the parties with respect to the claims at issue in this case and to enjoin State Farm from continuing to engage in those practices that violate the duties, and contractual and legal obligations owed to Palmer and Class Members under New Mexico statutory and common law.

42.    A class action is superior to maintenance of these claims on a claim-by-claim basis when all actions arise out of the same circumstances and course of conduct. A class action allows the Court to process all rightful claims in one proceeding. Class litigation is manageable considering the opportunity to afford reasonable notice of significant phases of the litigation to Class Members and permit distribution of any recovery. The prosecution of separate actions by

individual Class Members, or the individual joinder of all Class Members in this action, is impracticable and would create a massive and unnecessary burden on the resources of the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of each Class Member, should that be determined to be appropriate.

43.    The conduct of this action as a class action conserves the resources of the parties and the court system, protects the rights of each member of the class, and meets all due process requirements.

44.    Certification of the Class with respect to particular common factual and legal issues concerning liability, as well as the necessary and appropriate quantum of punitive damages, or ratio of punitive damages to actual harm, is appropriate under Rule 1-023.

45.    Certification of the Class is desirable and proper, because Palmer will fairly and adequately protect the interests of the Class that they seek to represent. There are no conflicts of interest between Palmer's claims and those other members of the Class. Palmer is cognizant of their duties and responsibilities to the Class. Palmer's attorneys are qualified, experienced, and able to conduct the proposed class action.

## CLAIM 1
## NEGLIGENCE

46.    Palmer and Class Members incorporate by reference the preceding paragraphs as if they were fully stated herein.

47.    State Farm had a duty to ensure Palmer and Class Members would be offered and obtain the maximum benefit of underinsured coverage and would not be sold illusory and/or misleading underinsured coverage.

48.    State Farm had a duty to provide Palmer and Class Members coverage for which a premium was charged and collected.

49.    It was reasonably foreseeable that the underinsured coverage sold to Palmer and

Class Members was, in large part, illusory and/or misleading and State Farm therefore materially misrepresented the terms and benefits of underinsured coverage, and charged a premium for such illusory and/or misleading coverage.

50.    A reasonably prudent insurance company exercising ordinary care would offer and sell underinsured coverage that was not illusory and/or misleading and would not materially misrepresent the terms of underinsured coverage by properly informing its insured of the coverage they were purchasing and obtaining a written waiver acknowledging its insured's consent to the purchase of what amounts to illusory underinsured motorist coverage.

51.    A reasonably prudent insurer would not charge a premium for coverage it intended to deny or did not provide.

52.    State Farm's actions and inactions, through its agents, employees, or others on its behalf, were negligent in that they breached the standard of care required of an insurance company issuing auto policies in New Mexico.

53.    As a result of State Farm's negligence, Palmer and Class Members sustained actual damages for which State Farm is liable. Palmer and Class Members are entitled to punitive damages for actions of State Farm that were willful, reckless and wanton, and in bad faith and/or based on dishonest business judgments.

## CLAIM 2
## VIOLATIONS OF THE NEW MEXICO UNFAIR TRADE PRACTICES ACT

54.    Palmer and Class Members incorporate by reference the preceding paragraphs as if they were fully stated herein.

55.    There was in effect, at all times material, a New Mexico statute commonly known as the New Mexico Unfair Trade Practices Act, N.M.S.A.1978, § 57-12-2 to 58-12-10 ("UPA"), including but not limited to Sections 57-12-2(D)(7), (D)(l4), (D)(15), (D)(l7) and Section 57-12-2(E), which prohibits a person selling insurance from engaging in unfair or deceptive trade

practices:

D. "unfair or deceptive trade practice" means an act specifically declared unlawful pursuant to the Unfair Trade Practices Act [Chapter 57, Article 12 NMSA 1978], a false or misleading oral or written statement, visual description or othim representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services or in the extension of credit or in the collection of debts by a person in the regular course of his trade or commerce, which may, tends to or does deceive or mislead and includes but is not limited to:

(7) representing that the goods or services are of a particular standard, quality or grade or that goods are of a particular style or model if they are of anothim;

(14) using exaggeration, innuendo or ambiguity as to a material fact or failing to state a material fact if doing so deceives or tends to deceive;

(15) stating that a transaction involves rights, remedies or obligations that it does not involve;

(17) failure to deliver the quality or quantity of goods or services contracted for;

E. "unconscionable trade practice" means an act or practice in connection with the sale, lease, rental or loan, or in connection with the offering for sale, lease, rental or loan, of any goods or services, including services provided by licensed professionals, or in the extension of credit or in the collection of debts which to a person's detriment: takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or results in a gross disparity between the value received by a person and the price paid.

56.    State Farm failed to deliver the quality or quantity of services applied for and purchased and paid for by Palmer and other insureds by failing to provide insurance applications and policies containing sufficient information to properly inform a reasonably prudent person purchasing underinsured insurance which Palmer and others similarly situated were under the reasonable belief that such coverage existed and would protect them.

57.    In the regular course of its business, State Farm or its agents knowingly made oral and written statements that were false and misleading in connection with the sale of underinsured motorist insurance in New Mexico.

58.    These false and misleading representations may, tend to, and do deceive or mislead

persons into believing that underinsured motorist coverage has a value that it does not have and into contracting for and paying premiums for underinsured motorist policies that are illusory and do not provide the underinsured motorist coverage and benefits that State Farm's customers reasonably expected to receive.

59.    In the regular course of its business, State Farm or its agents took advantage of its customers' lack of knowledge, ability, experience or capacity to a grossly unfair degree by marketing, advertising, selling, and receiving premium payments for illusory underinsured motorist coverage.

60.    Since the New Mexico Supreme Court's opinion in *State Farm Northwest Insurance Co. v. Weed Warrior Services*, 2010-NMSC-050, 149 N.M. 157, 245 P.3d 1209, State Farm has been on notice that underinsured motorist policies provide essentially no coverage at minimal limits and misleading coverage at higher limits, yet State Farm markets, advertises, sells, and received premiums for minimal and above-minimal limits underinsured motorist policies to and from customers, such as Palmer and Class Members, who do not know and do not understand that if they purchase minimal limits underinsured motorist coverage, they are vanishingly unlikely to receive any underinsured motorist coverage at all, or that if they purchase above-minimal limits and suffer damages in excess of the tortfeasor's liability coverage, they would only be able to receive limited underinsured motorist coverage in excess of the amounts received from the tortfeasor, losing the full benefit of their above-minimal limits coverage because of the Schmick offset.

61.    State Farm's actions resulted in a gross disparity between the value of the illusory and/or misleading underinsured motorist coverage received by Palmer and Class Members and the price of the premiums that Palmer and Class Members paid for illusory and/or misleading underinsured motorist coverage.

62.     State Farm, acting through its agents, adjusters, and employees, as set forth above, knowingly and willfully engaged in unfair trade practices in violation of Section 57-12-3, including but not limited to Sections 57-12-2(D)(7), (D)(l4), (D)(I5), (D)(17) and Section 57-12- 2(E).

### CLAIM 3
### VIOLATIONS OF THE NEW MEXICO UNFAIR INSURANCE PRACTICES ACT

63.     Palmer and Class Members incorporate by reference the preceding paragraphs as if they were fully stated herein.

64.     There was in effect at all times material a New Mexico statute commonly known as the Insurance Code New Mexico Unfair Insurance Practices Act, NMSA 1978, §§ 59A-16-1 to 59A-16-30 ("UIPA").

65.     The UIPA provides a private right of action to any person covered by the UIPA who has suffered damages as a result of a violation of that statute by an insurer or agent is granted a right to bring an action in district court to recover actual damages.

66.     Palmer and Class Members were insured under the policies issued by State Farm.

67.     State Farm owed Palmer and Class Members the duties of good faith, fair dealing, and the accompanying fiduciary obligations.

68.     In the sale and provision of insurance, State Farm failed to exercise good faith and failed to give the interests of Palmer and of Class Members the same consideration it gave their own interests.

69.     State Farm misrepresented the terms of the policy sold and provided to Palmer and Class Members, and/or failed to disclose material facts reasonably necessary to prevent other statements from being misleading and failed to implement and follow reasonable standards in the sale and provision of insurance.

70.     State Farm's acts and failures to act were in reckless disregard of Palmer's and Class Members' rights as an insured under the subject policies.

71.    State Farm's acts and practices took advantage of the lack of knowledge and experience of Palmer and Class Members to a grossly unfair degree.

72.    State Farm failed to abide by its statutory duties under the UIPA, and such violations constitute negligence per se.

73.    State Farm misrepresented to Palmer and Class Members pertinent facts or policy provisions relating to coverages at issue, in violation of NMSA 1978, § 59A-16- 20(A).

74.    State Farm's failure to act in good faith and State Farm's violations of the Insurance Code and Unfair Practices Act are proximate causes of damages sustained by Palmer and Class Members.

75.    State Farm's conduct was in bad faith, malicious, willful, wanton, fraudulent and/or in reckless disregard of Palmer's and Class Members' rights.

76.    Palmer and Class Members are entitled to attorneys' fees and costs pursuant to NMSA 1978, §§ 59A-16-30 and 39-2-1. As a direct and proximate result of Defendants' acts, omissions policies, and conduct in violating UIPA, as set forth above, Palmer and Class Members have sustained damages, in addition to the damages common to all counts of this complaint, including but not limited to the actual damages incurred, the cost of prosecution of this lawsuit, attorneys' fees, and interest on the sums owed under the policy. These injuries and damages are ongoing, permanent, and are expected to continue in the future.

## CLAIM 4
## REFORMATION OF INSURANCE POLICY

77.    Palmer and Class Members incorporate by reference the preceding paragraphs as though they were stated fully herein.

78.    Palmer and similarly situated Class Members mistakenly believed that, by paying a premium for specific dollar amounts and limits of underinsured motorist coverage, they would receive underinsured motorist coverage at those same specific dollar amounts and limits.

13

79.     State Farm and its agents knew that, because of the operation of the offset described in *Schmick*, Palmer and similarly situated Class Members were vanishingly unlikely to receive underinsured motorist benefits that they contracted for and for which State Farm collected premiums.

80.     At the time of contract formation, State Farm and its agents inequitably misrepresented the value of underinsured motorist coverage and failed to inform Palmer and similarly situated Class Members that, because of the operation of the offset described in *Schmick*, they were vanishingly unlikely to receive the underinsured motorist benefits that they contracted for and for which State Farm collected premiums.

81.     The inequitable failure of State Farm and its agents to inform Palmer and similarly situated Class Members that they were vanishingly unlikely to receive the underinsured motorist coverage reasonably caused Palmer and similarly situated Class Members to believe that, by paying a premium for underinsured motorist coverage, they would receive the full amount of underinsured motorist coverage reflected on their declaration pages.

82.     The insurance contracts respectively entered between State Farm and its agents, on the one hand, and Palmer and Class Members, on the other hand, do not express the intentions and reasonable beliefs of Palmer and Class Members that they would receive the underinsured motorist coverage that they contracted for and for which State Farm collected premiums.

83.     The Court should reform the insurance contracts respectively entered between State Farm and its agents, on the one hand, and Palmer and Class Members, on the other hand, to conform to the intentions and reasonable beliefs of Palmer and Class Members that they would receive the underinsured motorist coverage that they contracted for and for which State Farm collected premiums.

**CLAIM 5**
**BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**

14

84.    Palmer and Class Members incorporate by reference the preceding paragraphs as though they were stated fully herein.

85.    A special relationship exists between State Farm, on the one hand, and Palmer and Class Members, respectively, on the other hand, sufficient to impose a duty of good faith and fair dealing on State Farm owed to Palmer and Class Members.

86.    Implicit in the contract of insurance between Palmer and Class Members, on the one hand, and State Farm on the other, was the covenant that Defendants would, at all times, act in good faith and deal honestly and fairly with Palmer and Class Members.

87.    State Farm breached the implied covenant of good faith and fair dealing, in one or more of the following ways, including but not limited to:

a.    Failing to properly inform Palmer and Class Members of the illusory and/or misleading coverage it solicited and sold;

b.    Charging a premium for coverage that would not be provided;

88.    As a direct and proximate result of State Farm's acts and omissions alleged herein, Palmer and Class Members have suffered damages in an amount to be proven at trial.

89.    State Farm's acts and omissions alleged herein and breach of the implied covenant of good faith and fair dealing were done intentionally, willfully, wantonly, grossly, with dishonest business judgment, and/or with reckless disregard for the rights of Palmer and Class Members.

90.    Accordingly, Palmer and Class Members are entitled to recover punitive damages in an amount to be determined by the jury and sufficient to punish State Farm for its misconduct and to deter others from similar conduct in the future.


**CLAIM 6**

## NEGLIGENT MISREPRESENTATION

91.     Palmer and Class Members incorporate by reference the preceding paragraphs as though they were stated fully herein.

92.     A special relationship existed between State Farm, on the one hand, and Palmer and Class Members, respectively, on the other hand, sufficient to impose a duty on State Farm to disclose accurate information to Palmer and Class Members.

93.     As early as 1985, when the New Mexico Supreme Court published its decision in *Schmick v. State Farm*, State Farm knew that underinsured motorist coverage would be illusory and/or misleading under certain circumstances.

94.     State Farm, however, withheld this information from Palmer and Class Members and hid from them the fact that the underinsured motorist coverage as impacted by the *Schmick* offset is illusory and/or misleading in its effect.

95.     From 1985 through the present, State Farm failed to disclose material facts and made material misrepresentations to Palmer and Class Members regarding illusory and/or misleading underinsured motorist coverage.

96.     State Farm, by their failures and omissions, misrepresented underinsured motorist coverages through their standard and uniform applications and policies given to Palmer and Class Members, which State Farm knew or should have known, were misleading and contained material misrepresentations.

97.     State Farm's material omissions and misrepresentations were made to induce Palmer and Class Members to purchase underinsured motorist coverage that State Farm knew or should have known was illusory and/or misleading.

98.     Palmer and Class Members reasonably relied on State Farm's material omissions and misrepresentations when deciding to purchase underinsured motorist coverage at the level of

coverage they respectively purchased.

99.    As a result of State Farm's misrepresentations and omissions, State Farm is liable to Palmer and Class Members for their damages flowing from those misrepresentations and omissions.

100.    As a direct and proximate result of State Farm's negligent misrepresentations, Palmer and Class Members suffered economic loss, including the payment of premiums for coverage that had no value, lost benefits of underinsured motorist coverage and out-of-pocket expenses. Palmer and Class Members seek the full measure of damages allowed under applicable law.

## CLAIM 7
## DECLARATORY JUDGMENT

101.    Palmer and Class members incorporate by reference the preceding paragraphs as though they were stated fully herein.

102.    An actual controversy exists between the parties thereby rendering declaratory relief proper under the New Mexico Declaratory Judgment Act, NMSA 1978, Sections 44-6-1 through 44-6-15.

103.    Palmer and Class Members are entitled to a declaratory judgment establishing their respective rights and obligations of the parties with respect to the claims set forth herein.

## INJUNCTIVE RELIEF

104.    Palmer and Class Members incorporate by reference the preceding paragraphs as though they were stated fully herein.

105.    Palmer and Class Members are entitled to injunctive relief under the claims they have pled because Palmer and Class Members would suffer an irreparable injury that monetary damages at a later time would not adequately compensate them for the injury of paying a premium for illusory and/or misleading coverage.

106.    State Farm should be enjoined from continuing practices that violate the duties, and contractual and legal obligations owed to Palmer and Class Members.

107.    State Farm must be compelled to stop their practice of collecting premiums for the sale of illusory and/or misleading underinsured motorist coverage and failing to provide underinsured motorist coverage benefits equal to the limits of liability coverage where they failed to properly inform Palmer and Class Members throughout the application and policy underwriting process.

## REQUEST FOR RELIEF

Palmer and Class Members request a jury trial and the following relief:

i.    An order certifying this action to proceed as a class action, authorizing Palmer and to represent the interests of the Class Members as appropriated and appointing undersigned counsel to represent the class.

ii.    Awarding compensatory damages to Palmer and Class Members for the damages done to them by State Farm in an amount to be proven at trial;

iii.    Awarding Palmer and Class Members damages from State Farm as a result of its violations of the UIPA, in an amount to be determined at trial for attorneys' fees and costs;

iv.    Awarding treble damages in accordance with NMSA 1978, Sections 57-12-10(B) and any and all damages pursuant to NMSA 1978, Sections 57-12-1 through -26, which will deter State Farm and others from such unfair trade practices and wrongful conduct in the future and will punish them for the conduct set forth herein;

v.    Granting declaratory relief that establishes the rights and obligations of the parties with respect the claims set forth herein;

vi.      Granting injunctive relief requiring State Farm to properly inform Palmer and

Class Members throughout the application and policy underwriting process of

the true value of the underinsured motorist benefits that are being advertised and

sold;

vii.     Awarding Palmer and Class Members their costs and expenses incurred in these

actions, including reasonable attorney's fees, experts' fees, and costs; and

viii.    Granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ *Kedar Bhasker*
Kedar Bhasker
BHASKER LAW
1400 Central Ave. SE, Suite 2000
Albuquerque, NM 87106
Phone: 505 720-2113
Fax: 505 998-6628
Kedar@bhaskerlaw.com

Corbin Hildebrandt
CORBIN HILDEBRANDT P.C.
1400 Central Ave. SE, Suite 2000
Albuquerque, NM 87106
Phone: 505 998-6626
Fax: 505 998-6628
corbin@hildebrandtlawnm.com

*Counsel for the Plaintiff*

# Ex. 1

Providing Insurance and Financial Services
Home Office, Bloomington, IL

 **State Farm**

February 07, 2019

Bhasker Law
1400 Central Ave SE Ste 2000
Albuquerque NM 87106-4852

**State Farm Claims**
PO Box 106171
Atlanta GA 30348-6171

RE:    Claim Number:        31-746X-421
       Date of Loss:         October 13, 2015
       Our Insured:          Freeman J Palmer
       Your Client(s):       Chelsea Palmer and Freeman Palmer

To Whom It May Concern:

Please find enclosed a copy of the insured application per your request.

Sincerely,

Melissa Shim
Claim Specialist
(844) 292-8615 Ext. 7403645366

State Farm Mutual Automobile Insurance Company

```
DOCUMENT  1 OF  1                                                02/04/19
                                                                 13:00:35
                            Auto Application                     AUC000A0
RAW NEW VEHICLE TRANSACTION ORIGINAL            SF Mutual

Policy No/Car No: 100 9616 31                   Purch Dt: 04-01-2010
        Eff Date: 12-10-2014
        App Date: 12-05-2014 11:27 AM           Agt-AFO:
        Recd Date: 12-11-2014
```

```

        Repl No:                                Eapp no: 312 3407 H84
```
------------------------------------------------------------------------------------



```
Name and Mailing Address

   PALMER, FREEMAN J

   7212 COORS BLVD SW
   ALBUQUERQUE      NM 87121-7208                County: BERNALILLO

   Latitude:   34.957606   Longitude: -106.714835
```

```
                                                         PAGE  1 OF  7
                  Next:        +  1
F2=Addl F keys   F4=Prompt   F7=Bkwd   F8=Fwd   F18=Next Doc   F19=Last doc
```

```
DOCUMENT  1 OF  1                                          02/04/19
                                                          13:01:07
                                                          AUC000AG
```



```
            Policy no: 100 9614              Changed by:
                                               Date: 12-11-14
                                               Time: 08:17 AM
```

Additional instructions:



Agt Remarks

```
Prior Insurance

Prior Carrier: GEICO
    BI Limits:   25/  50      Time Insd: 2  Yrs 6  Mos    Exp Date: 02-05-2015
```

```
DOCUMENT  1 OF  1                                              02/04/19
                                                              13:01:13
                                                              AUC000A0
Driver Information

Principal Operator
First: FREEMAN              MI: J Last: PALMER                Suf:
                                       St: NM    Marital stat: ████████
████████████████████████████              SS #:
Rel to applicant:
Lic 3 yrs: YES If yes, Age first Lic: 16   Original lic date: ████████

Occ: ████                          Employ Stat: ████████████


   Assigned Driver: Yes

SOURCE USED FOR ELIGIBILITY/RATING IN AQP:
MINOR VIOLATIONS              —
MAJOR VIOLATIONS(COMMON)      —
MAJOR VIOLATIONS(EXTENDED)    —

Addl Driver Name
First: ████████            MI: L Last: █              Suf:
License No: ████████              St: NM    Marital stat: █ ████
Birthdate: ████      Sex: ████            SS #: ████████
Rel to applicant: SELF
Lic 3 yrs: YES If yes, Age first Lic: 16   Original lic date: ████████

                        Employ Stat: ████████████


   Assigned Driver: No

SOURCE USED FOR ELIGIBILITY/RATING IN AQP:
MINOR VIOLATIONS              —
MAJOR VIOLATIONS(COMMON)      —
MAJOR VIOLATIONS(EXTENDED)    —
                                                      PAGE  3 OF  7
             Next:        + 3
F2=Addl F keys  F4=Prompt  F7=Bkwd  F8=Fwd  F18=Next Doc  F19=Last doc
```

```
DOCUMENT  1 OF  1                                      02/04/19
                                                       13:01:20
                                                       AUC000A0
Addl Driver Name
First: CHELSEA          MI:      Last: PALMER              Suf:
License No:                         St: NM    Marital stat:
Birthdate:              Sex:                   SS #:
Rel to applicant:
Lic 3 yrs: YES If yes, Age first Lic: 16   Original lic date:
```



```
                              Employ Stat: STUDENT
```

```
Remove:
```

```
     Assigned Driver: Yes

SOURCE USED FOR ELIGIBILITY/RATING IN AQP:
MINOR VIOLATIONS              -
MAJOR VIOLATIONS(COMMON)      -
MAJOR VIOLATIONS(EXTENDED)    -

Vehicle Use/Discount
```



```
           Ann mil:  12000
           Odometer: 115000
         Vehicle use: Pleasure/Work/School
```



DOCUMENT  1 OF  1                                              02/04/19
                                                              13:01:29
                                                              AUC060A0

UNDERWRITING QUESTIONS

    ANSWER  DURING THE LAST 5  YEARS, HAVE YOU, THE APPLICANT, OR ANY HOUSEHOLD
            MEMBER, OR ANY REGULAR DRIVER:
      NO    HAD LICENSE SUSPENDED, REVOKED, REFUSED?
      NO    HAD ACCIDENT OR LOSS?
      NO    BEEN FINED, CONVICTED, OR FORFEITED BAIL FOR TRAFFIC VIOLATIONS?
      REGISTERED OWNER(S):
            FIRST              MI LAST
            
            FREEMAN            J  PALMER

    OTHER LINES: 

NECHO SYSTEM-DETERMINED INFORMATION

                            COMPANY: MUTUAL        
                      


VEHICLE ELIGIBILITY QUESTIONS

    ANSWER
      NO    HAS THIS VEHICLE BEEN DRIVEN UNINSURED IN THE PAST 12 MONTHS?

HOUSEHOLD ELIGIBILITY QUESTIONS

    ANSWER
      YES   Have all HH drivers been licensed 3 or more yrs in the US or
            Canada?

                                                        PAGE  6 OF  7
                Next:      +  6
    F2=Addl F keys   F4=Prompt   F7=Bkwd   F8=Fwd   F18=Next Doc   F19=Last doc

```
DOCUMENT  1 OF  1                                        02/04/19
                                                         13:01:25
                                                         AUC000A0
   Vehicle

              Year: 2001                  Vin:
              Make: JEEP                   GRG:      DRG:
             Model: WRANGLER               LRG:
        Body Style: "SE" 4WD         Prior Dam: NO
   Veh safety disc:                       Anti-theft disc:

          Date Purchased: 04-01-2010
   Effective Date of Policy: 12-10-2014

   SFPP

      Add to SFPP acct no:

   Coverage Information

      Coverages                 Limits or Deductible        Premium
      BI                        25/50                        263.09
      PD                        25                             0.00
      UBI                       25/50                          70.88
      UPD                       25                             0.00

            Premium:    $333.97

                                          Quote Eff Date: 12-10-2014

   Supporting Documents

      Number  Description
```



```
DOCUMENT  1 OF  1                                          02/04/19
                                                           13:01:34
                                                           AUC000A0
HOUSEHOLD VIOLATION/ACCIDENT ELIGIBILITY QUESTIONS

    ANSWER
       0      NUMBER OF MINOR VIOLATIONS IN THE PAST 3 YEARS
       0      NUMBER OF MAJOR VIOLATIONS IN THE PAST 3 YEARS
       0      NUMBER OF MAJOR VIOLATIONS IN THE PAST 3-5 YEARS

Agent Information

           Agent's name: ███████████
                  Phone: ███████████        Initials: ██████
```

# Ex. 2

**State Farm Mutual Automobile Insurance Company**
2700 South Sunland Drive
Tempe AZ  85282-3387

92451-2-H          MUTL  VOL

## DECLARATIONS PAGE

NAMED INSURED

AT1                         31-3417-2  H     A
            000610  0058
PALMER, FREEMAN J & JENNIFER
L
7212 COORS BLVD SW
ALBUQUERQUE NM  87121-7208

POLICY NUMBER    100 9614-F10-31B

POLICY PERIOD NOV 04 2015 to JUN 10 2016
12:01 A.M. Standard Time

STATE FARM PAYMENT PLAN NUMBER
 1190446424

AGENT

STEVE KUNKLE INS AGENCY INC
601 MAIN ST SE STE 23
LOS LUNAS, NM 87031-4309

PHONE: (505)565-3400

**DO NOT PAY PREMIUMS SHOWN ON THIS PAGE.**
**IF AN AMOUNT IS DUE, THEN A SEPARATE STATEMENT IS ENCLOSE D.**

### YOUR CAR

| YEAR | MAKE | MODEL | BODY STYLE | VEHICLE ID. NUMBER | CLASS |
|------|------|-------|-----------|-------------------|-------|
| 2007 | PONTIAC | TORRENT | SPORT WG | 2CKDL63F976253579 | 403H61H000 |

| SYMBOLS | COVERAGE & LIMITS | PREMIUMS |
|---------|-------------------|----------|
| A | Liability Coverage | $414.01 |
|   | Bodily Injury Limits | |
|   | Each Person,  Each Accident | |
|   | $25,000      $50,000 | |
|   | Property Damage Limit | |
|   | Each Accident | |
|   | $25,000 | |
| H | Emergency Road Service Coverage | $3.36 |
| U | Uninsured and Unknown Motorists Coverage | $85.06 |
|   | Bodily Injury Limits | |
|   | Each Person, Each Accident | |
|   | $25,000      $50,000 | |
|   | Property Damage | |
|   | Each Accident | |
|   | $25,000 | |

| * Total premium for NOV 04 2015 to JUN 10 2016 | $502.43 | This is not a bill. |
|---|---|---|

### IMPORTANT MESSAGES

Replaced policy number 1009614-31A.

Your total renewal premium for DEC 10 2015 to JUN 10 2016 is $418.69.

* The total premium listed above reflects a recent change to your policy and the 6 month renewal premium.

### EXCEPTIONS, POLICY BOOKLET & ENDORSEMENTS (See policy booklet & individual endorsements for coverage details.)

YOUR POLICY CONSISTS OF THIS DECLARATIONS PAGE, THE POLICY BOOKLET -
FORM 9831A, AND ANY ENDORSEMENTS THAT APPLY, INCLUDING THOSE ISSUED TO YOU
WITH ANY SUBSEQUENT RENEWAL NOTICE.
6931A.2   AMENDATORY ENDORSEMENT.

Agent:      STEVE KUNKLE INS AGENCY INC

Telephone:  (505)565-3400

Prepared    NOV 13 2015      3417-BDA

This policy is issued by State Farm Mutual Automobile Insurance Company.

## MUTUAL CONDITIONS

1. **Membership.** While this policy is in force, the first insured shown on the Declarations Page is entitled to vote at all meetings of members and to receive dividends the Board of Directors in its discretion may declare in accordance with reasonable classifications and groupings of policyholders established by such Board.

2. **No Contingent Liability.** This policy is non-assessable.

3. **Annual Meeting.** The annual meeting of the members of the company shall be held at its home office at Bloomington, Illinois, on the second Monday of June at the hour of 10:00 A.M., unless the Board of Directors shall elect to change the time and place of such meeting, in which case, but not otherwise, due notice shall be mailed each member at the address disclosed in this policy at least 10 days prior thereto.

In Witness Whereof, the State Farm Mutual Automobile Insurance Company has caused this policy to be signed by its President and Secretary at Bloomington, Illinois.

_Lynne M. Yaxzell_
Secretary

_Edward B. Rust Jr._
President