# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

FREEMAN J. PALMER,

    Plaintiff,

    vs.                                                 No. 1:19-cv-00301-WJ-SCY

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,
STATE FARM FIRE AND CASUALTY COMPANY,
and STATE FARM GENERAL INSURANCE COMPANY

    Defendants.

## **MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO REMAND AND GRANTING DEFENDANTS' MOTION TO STAY**

THIS MATTER comes before the Court upon Plaintiff's Motion to Remand, filed April 9, 2019 (**Doc. 8**), and Defendants' Motion to Stay, filed April 9, 2019 (**Doc. 10**). Having reviewed the parties' pleadings and the applicable law, the Court finds that Plaintiff's Motion to Remand is not well-taken and, therefore, is **DENIED.** However, the Court finds that Defendants' Motion to Stay is well-taken and, therefore, is **GRANTED.**

## BACKGROUND

This putative class action arises out of a dispute over "underinsured motorist coverage" in an automobile policy. NMSA § 66-5-301 ("'underinsured motorist' means an operator of a motor vehicle with respect to the ownership, maintenance or use of which the sum of the limits of liability under all bodily injury liability insurance applicable at the time of the accident is less than the limits of liability under the insured's uninsured motorist coverage."). Plaintiff alleges that underinsured motorist coverage provided by Defendants is illusory or misleading, as the insured

will receive either no coverage or substantially reduced coverage once the statutory offset above is applied. Plaintiff seeks to certify the following class:

> All persons (and their heirs, executors, administrators, successors, and assigns) from whom State Farm collected a premium for underinsured motorist coverage on a policy that was issued or renewed in New Mexico by State Farm and that purported to provide underinsured motorist coverage, but which effectively provides no underinsured motorist coverage ("UIM") and/or misleading UIM coverage, because of the statutory offset recognized in *Schmick v. State Farm Mutual Automobile Insurance Company,* 704 P.2d 1092 (1985).

This putative class action competes with another putative class action filed against Defendants, which is also before the undersigned, *Dana Schwartz v. State Farm Mutual Automobile Insurance Company et al.*, 1:18-cv-00328 WJ/SCY. In this case, Plaintiff purchased uninsured and underinsured motorist coverage in the minimum amount available at $25,0000 per person and $50,000 per occurrence. Defendants collected a premium of $70.88 for the uninsured and underinsured motorist coverage for a six-month period beginning in 2014 and ending June 2015. Plaintiff alleges that Defendants misled him and other putative class members, and they did not understand that "if they purchase minimal limits underinsured motorist coverage, they are vanishingly unlikely to receive any underinsured motorist coverage at all, or that if they purchase above-minimal limits… they would only be able to receive limited underinsured motorist coverage in excess of the amounts received from the tortfeasor, losing the full benefit of their above-minimal limits coverage because of the *Schmick* offset." **Doc. 2, ¶ 60.** *See generally Schmick v. State Farm Mut. Auto. Ins. Co.*, 103 N.M. 216, 704 P.2d 1092 (N.M. 1985) (explaining statutory offset in NMSA § 66-5-301).

There are several other putative class actions in this district asserting similar claims against various insurers. In one of them, *Crutcher v. Liberty Mut. Ins. Co. et al.*, 1:18-cv-412 (JCH/KBM),

United States District Judge Judith Herrera certified, and the New Mexico Supreme Court accepted, the following question:

> Under N.M. Stat. Ann. § 66-5-301, is underinsured motorist coverage on a policy that offers only minimum UM/UIM limits of $25,000 per person/$50,000 per accident illusory for an insured who sustains more than $25,000 in damages caused by a minimally insured tortfeasor because of the offset recognized in *Schmick v. State Farm Mutual Automobile Insurance Company*, and, if so, may insurers charge a premium for that non-accessible underinsured motorist coverage?

(the "certified question"). An answer to this certified question may resolve substantial issues in this case.

## DISCUSSION

### I. **Motion to Remand**.

The Class Action Fairness Act ("CAFA") "gives federal courts jurisdiction over certain class actions, defined in § 1332(d)(1), if the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million." *Dart Cherokee Basin Operating Co. v. Owens,* ⸺ U.S. ⸺, 135 S.Ct. 547, 552, 190 L.Ed.2d 495 (2014). Plaintiff argues that this case should be remanded because Defendants failed to carry their evidentiary burden as to the amount in controversy. The Court disagrees.

The amount in controversy is "an estimate of the amount that will be put at issue in the course of the litigation." *McPhail v. Deere & Co.*, 529 F.3d 947, 958 (10th Cir. 2008). "[F]ederal jurisdiction is proper if a defendant proves jurisdictional facts by a preponderance of the evidence such that the amount in controversy may exceed $5,000,000. Once a defendant meets this burden, remand is appropriate only if the plaintiff can establish that it is legally impossible to recover more than $5,000,000." *Frederick v. Hartford Underwriters Ins. Co.*, 683 F.3d 1242, 1247 (10th Cir. 2012). Defendants need only show that the damages are "at issue—that is, that such damages *could* be awarded." *McDaniel v. Fifth Third Bank*, 568 F. App'x 729, 731 (11th Cir. 2014)

(emphasis in original); *see also McPhail*, 529 F.3d at 955 (defendants must establish facts that made it "possible" that the jurisdictional amount was in play). "The amount in controversy is not proof of the amount the plaintiff will recover. Rather, it is an estimate of the amount that will be put at issue in the course of the litigation." *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008)

### A. **Plaintiff's procedural objections are overruled.**

Initially, Plaintiff argues that this case should be remanded because Defendants failed to "prove" jurisdiction in their notice of removal or provide evidence that the amount in controversy was more than $5,000,000. However, since *Dart Cherokee*, Defendants need not provide proof of the amount in controversy in the removal notice. Rather, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 135 S. Ct. 547, 554, (2014). Here, Defendants' notice of removal states a plausible allegation that the amount in controversy is more than $5,000,000.

Plaintiff also argues that Defendants failed to amend their notice of removal after he pointed out defects therein. However, there is no defect in the notice of removal. The notice of removal states a plausible allegation that the amount in controversy is more than $5,000,000. Now that Plaintiff has contested the amount in controversy, Defendants have the burden to produce jurisdictional evidence. In doing so, they need not amend the notice of removal, and Plaintiff's authorities that say otherwise appear to be pre-*Dart Cherokee*.

### B. **Defendants carried their evidentiary burden by a preponderance of the evidence.**

Plaintiff seeks unspecified compensatory damages and treble damages pursuant to NMSA § 57-12-10(B). This includes payment of premiums for coverage that had no value, lost benefits of underinsured motorist coverage, and out of pocket expenses. **Doc. 2, p. 17.** Plaintiff also seeks punitive damages and attorney fees. Plaintiff represents he paid $70.88 for six months of U coverage (combined uninsured and underinsured coverage) at the minimum level.

Here, Defendants satisfied their burden of presenting evidence that the damages put at issue "may" by more than $5,000,000, through an affidavit and exhibits attached to their response to the motion to remand. Defendants represented they charge a single premium for uninsured and underinsured coverage, called "U Coverage." Defendants collect approximately $40 million each year in premiums for combined uninsured and underinsured motorist coverage. Over the last five years, that amounts to over $200 million. It appears that the class will go back at least five years. **Doc. 2, ¶ 16** (Plaintiff began paying premiums in 2014). Moreover, Defendants issue approximately 250,000 policies each year in New Mexico containing underinsured motorist coverage. They also presented evidence that 40% of their U Coverage claim payments are for bodily injury under the *underinsured* motorist coverage.

Plaintiff also seeks reformation of the polices for everyone who received underinsured motorist coverage. **Doc. 2, p. 13-14.** Specifically, he alleges that the putative class members reasonably believed they would have access to the full amount of underinsured coverage in their policies. However, because of the allegedly undisclosed statutory offset, the first $25,000 of underinsured coverage is generally not available. As noted above, Defendants issued approximately 250,000 policies containing underinsured motorist coverage per year for the last five years. The benefit received by each insured, or the cost incurred by the Defendants, for an increase in coverage limits of $25,000 for all 1,250,000 policies issued over the last five years,

would more than satisfy the amount in controversy. The cost to Defendants for this increased coverage – or the value of the benefit received by the insureds- is undoubtedly more than $5,000,000. *See, e.g., Valdez v. Metro. Prop. & Cas. Ins. Co.*, 867 F. Supp. 2d 1143, 1180 (D.N.M. 2012) (considering aggregate increase in coverage caused by potential reformation of the policies).

Moreover, if a mere 200 class members were in accidents and entitled to receive the additional payments under the reformed underinsured motorist coverage ($25,000 per policy), the amount in controversy would be satisfied. *See Barreras v. Travelers Home & Marine Ins. Co.*, No. 12-CV-0354 RB/RHS, 2012 WL 12870348, at *3 (D.N.M. Oct. 17, 2012).

Based on this evidence, if *any* damages are awarded, it is unclear how the damages figure could be *below* $5,000,000. When these figures are considered along with the requested treble damages, punitive damages, and attorney fees, there is no doubt that more than $5,000,000 is at play in this case. *See generally Barreras v. Travelers Home & Marine Ins. Co.*, No. 12-CV-0354 RB/RHS, 2012 WL 12870348, at *3 (D.N.M. Oct. 17, 2012) (attorney fees and treble damages allowed by New Mexico law under UPA statute), *citing* N.M. STAT. ANN. § 57-12-10(B) (treble damages for violation of UPA); s*ee also* NMSA§§ 39-2-1, 57-12-10(C) (attorney fees allowed for UPA claim). Therefore, the Court concludes that Defendants submitted sufficient evidence to show it is *possible* that more than $5,000,000 is at issue in this case.

### C. **Plaintiff's Arguments.**

Plaintiff requests that Defendants set out how much of the combined U Coverage premium is for underinsured motorist coverage. But those figures do not exist, as Defendants charge a single premium for combined uninsured and underinsured coverage. However, 40% of U Coverage claim payments are for underinsured motorist coverage. The Court concludes Plaintiff's request is

unnecessary, because Defendants have clearly shown by other evidence that more than $5,000,000 is at issue in this case.

Plaintiff also requests that Defendants break down indemnity payments for underinsured motorist coverage at minimum limits and at above-minimum limits. Plaintiff also requests that Defendants calculate the premium for the "illusory" portion of the underinsured motorist coverage. However, Plaintiff broadly defined the class to include everyone who bought underinsured motorist coverage, including in above-minimum amounts. Plaintiff alleges that Defendants mislead the putative class about the nature of underinsured motorist coverage as to *everyone* who purchased that coverage. **Doc. 2, ¶ 60** (alleging that Defendants knew that they provided misleading coverage at higher than minimum limits). Therefore, any distinction between minimum and above-minimum policies is unnecessary, because Plaintiff alleges that underinsured motorist coverage is misleading at all levels. For example, Plaintiff asserts that he and other putative class members were misled into thinking they would receive the full amount of coverage, when in fact the first $25,000 of underinsured motorist coverage is generally not accessible. In other words, Plaintiff requests that each underinsured motorist policy be increased by $25,000.

However, the Court need not engage in a mini-trial on damages when the Defendants have produced clear evidence that the amount in controversy is above $5,000,000. *See Hammond v. Stamps.com, Inc.*, 844 F.3d 909, 913 (10th Cir. 2016) (Gorsuch, J.) ("The jurisdictional test history suggests serves a useful purpose, helping to keep cases from bogging down in mini-trials before they've even begun. At this stage, we're just trying to decide the forum for the dispute, not liability or damages.").

Now that Defendant has produced evidence that it is possible that more than $5,000,000 is at issue in this case, Plaintiff has the burden of showing it is legally certain that no more than

7

$5,000,000 is at issue in this case. Plaintiff failed to carry this burden and does not even argue that the damages could be less than $5,000,000.

D. **Discovery and Hearing**.

Plaintiff requested jurisdictional discovery and a hearing for the first time in his reply brief. "[A] refusal to grant discovery constitutes an abuse of discretion if the denial results in prejudice to a litigant. Prejudice is present where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 103 (10th Cir. 2012), *quoting in part Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1326 (10th Cir.2002). "The district court does not abuse its discretion by denying jurisdictional discovery where there is a very low probability that the lack of discovery affected the outcome of this case." *Grynberg*, 490 F. App'x at 103 (internal quotation marks and citations omitted). "[T]he burden of demonstrating a legal entitlement to jurisdictional discovery—and the related prejudice flowing from the discovery's denial—[is] on the party seeking the discovery...." *Id.* (internal quotation marks omitted).

As explained above, jurisdictional discovery is unnecessary, because Defendants already provided evidence that more than $5,000,000 is in play. Moreover, specific discovery on underinsured motorist coverage at the minimum level is unnecessary to prove jurisdiction, because Plaintiff has put at issue damages for *everyone* who purchased underinsured motorist coverage.

Moreover, Plaintiff generally does not specify which specific documents he would have sought in discovery. Rather, it appears that Plaintiff is conducting a fishing expedition or trying to jump start discovery. *See generally Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1190 (10th Cir. 2010). Any further inquiry into jurisdiction appears to

be unnecessary at this time and would lead to a burdensome mini-trial on damages. Therefore, the Court declines to allow jurisdictional discovery at this time, or a hearing.

## II. Motion to Stay.

Defendants request that the Court stay this case pending the New Mexico Supreme Court's answer to the question certified in *Crutcher v. Liberty Mutual Ins. Co., et al.*, 1:18-cv-00412 JCH/JFR. Plaintiff objects, arguing that a stay is unnecessary because Defendants have not yet filed a motion to dismiss on the merits. Plaintiff requests permission to conduct class discovery, arguing that class discovery is independent from the merits issues.

However, Plaintiff also agrees a stay may be necessary if Defendants file a motion to dismiss. Here, Defendants represent that they intend to file a motion to dismiss if this case is not stayed. The Court agrees with Defendants that the New Mexico Supreme Court's answer to the certified question may resolve substantial issues in this case. This answer would not only affect the merits of the case but may lead to changes in the scope of the putative class and change the scope and nature of the class discovery. The Court concludes it would not make sense to require Defendants to draft motions to dismiss – and Plaintiff to respond – when the motion will have to be re-briefed once the New Mexico Supreme Court answers the certified question.

Moreover, Plaintiff is unlikely to be substantially prejudiced. The New Mexico Supreme Court has already accepted the certified question. This case is in its early stages. Discovery has not yet started, and a scheduling order has been reasonably delayed for good cause pending resolution of the motion to remand and motion to stay. **Doc. 11.** The Court finds that any prejudice to Plaintiff is outweighed by the need to avoid wasting the parties' and the Court's resources.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Remand (**Doc. 8**) is hereby **DENIED** for reasons described in this Memorandum Opinion and Order;

**IT IS FURTHER ORDERED** that Defendants' Motion to Stay **(Doc. 10)** is **GRANTED**; and

**IT IS FINALLY ORDERED** that this case is **STAYED** pending the New Mexico Supreme Court's answer to Judge Herrera's certified question.

_____
CHIEF UNITED STATES DISTRICT JUDGE