## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

_____

FREEMAN J. PALMER, and
CHELSEA PALMER, *on behalf of*
*themselves and all others similarly situated,*

       Plaintiffs,

     vs.                               1:19-cv-00301-KWR-SCY

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, *et al.*

       Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court upon Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint, filed December 6, 2021 **(Doc. 46).** Having reviewed the parties' pleadings and the applicable law, the Court finds that Defendants' Motion to Dismiss is not well-taken and, therefore, is **DENIED.**

## BACKGROUND

This putative class action arises out of a dispute over "underinsured motorist coverage." NMSA § 66-5-301 ("'underinsured motorist' means an operator of a motor vehicle with respect to the ownership, maintenance or use of which the sum of the limits of liability under all bodily injury liability insurance applicable at the time of the accident is less than the limits of liability under the insured's uninsured motorist coverage.").

Since 2014, Defendants issued insurance policies to Plaintiff Freeman Palmer which provided for liability coverage in the amount of $25,000 per person/$50,000 per occurrence, and

uninsured and underinsured motorist coverage in the amount of $25,000 per person/$50,000 per occurrence.  **Doc. 44 at 3.**

Plaintiffs allege that Defendants misrepresented or failed to adequately explain to them and similarly situated class members the extent of "underinsured motorist" coverage when purchased at the minimum level of $25,000.  **Doc. 44 at 4** (Defendant's policies "misrepresented the true value of underinsured motorist coverage and failed to properly inform Freeman J. Palmer that the underinsured motorist coverage for which Defendants collected a premium was illusory and misleading."). Plaintiffs allege that Defendants "misled insureds into believing they are purchasing the amount of underinsured motorist coverage they have selected without any offset." **Doc. 44 at 5.**  Plaintiff Freeman Palmer alleges that Defendants did not inform him that that he would be unlikely to recover any underinsured motorist coverage when purchased at minimum limits.  **Doc. 44 at 7.**

On April 13, 2015, Chelsea Palmer sustained bodily injuries arising from an automobile collision in Albuquerque, New Mexico.  **Doc. 44 at 8.**  Plaintiffs allege that an "underinsured motorist" ran a traffic signal and collided into Chelsea Palmer's vehicle.  **Doc. 44 at 8.**  Chelsea Palmer alleges that she suffered serious bodily injuries and other damages, and suffered total damages in excess of $50,000. **Doc. 44 at 8.**

At the time of the collision, Chelsea Palmer was an insured beneficiary under the Freeman J. Palmer policy, which provided her with uninsured and underinsured motorist insurance coverage up to $25,000 per person and $50,000 per occurrence.  The alleged tortfeasor carried minimum limit liability insurance with limits of $25,000 per person.  **Doc. 44 at 8.**

Plaintiffs allege that they had a reasonable expectation that they carried underinsured motorist coverage of $25,000 per person and $50,000 per occurrence.  Plaintiffs allege that they

had a reasonable belief that Chelsea Palmer was entitled to underinsured motorist benefits pursuant to their insurance policy.

Chelsea Palmer apparently received $25,000 in liability payments from the tortfeasor.  She also filed a claim with Defendants for underinsured motorist coverage.  Defendants denied the claim for minimum limits underinsured motorist coverage, asserting that "[d]ue to the limits of the BI [bodily injury] portion of the claim being equal to that of our UIM policy, it appears the offset would apply, therefore there is no UIM claim."  **Doc. 44-4 at 1;** *See generally Schmick v. State Farm Mut. Auto. Ins. Co.*, 103 N.M. 216, 704 P.2d 1092 (N.M. 1985) (explaining statutory offset in NMSA § 66-5-301). Chelsea Palmer received nothing from Defendants for her underinsured motorist coverage.

Plaintiffs' putative class action complaint seeks to maintain a class of the following:

> "All persons (and their heirs, executors, administrators, successors, and assigns), from whom Defendants collected a premium for underinsured motorist coverage after August 14, 1985 to present, on a policy that was issued or renewed in New Mexico by Defendants and that purported to provide underinsured motorist coverage, but which effectively provides no underinsured motorist coverage ("UIM") and/or misleading UIM coverage, because of the statutory offset recognized in *Schmick v. State Farm Mutual Automobile Insurance Company*, 704 P.2d 1092 (1985)."

**Doc. 44 at 10.**  They also assert the following subclass:

> All Class Members (and their heirs, executors, administrators, successors, and assigns) where underinsured motorist coverage on a policy that was issued or renewed in New Mexico by Defendants and that purported to provide an amount of UM/UIM limits per occurrence, but which in fact provides none or a misleading amount of underinsured motorists coverage, because of the statutory offset recognized in *Schmick v. State Farm Mutual Automobile Insurance Company*, 704 P.2d 1092 (1985), and who sustained damages in excess of an insured tortfeasor's policy limits, received the extent of all bodily injury liability limits available, made a claim with Defendants for underinsured motorist benefits and were denied those benefits.

*Id.*

Plaintiffs filed a First Amended Complaint asserting the following claims:

Count I:        Negligence;
Count II:       Violations of the Unfair Trade Practices Act (N.M.S.A.1978, Section 57-12-2) ("UPA");
Count III:      Violations of the Unfair Insurance Practices Act (N.M.S.A.1978, §§ 59A–16–1 *et seq.*) ("UIPA");
Count IV:       Reformation of Insurance Policy
Count V:        Breach of Contract and Covenant of Good Faith and Fair Dealing;
Count VI:       Negligent Misrepresentation;
Count VII:      Declaratory Judgment; and
Count VIII:     Injunctive Relief.

In *Crutcher v. Liberty Mut. Ins. Co., et al.*, Case No.: 18-cv-00412-JCH-LF (D.N.M.),

United States District Judge Judith C. Herrera certified the following questions to the New

Mexico Supreme Court:

Under N.M. Stat. Ann. § 66-5-301, is underinsured motorist coverage on a policy that offers only minimum UM/UIM limits of $25,000 per person/$50,000 per accident illusory for an insured who sustains more than $25,000 in damages caused by a minimally insured tortfeasor because of the offset recognized in *Schmick v. State Farm Mutual Automobile Insurance Company*, and, if so, may insurers charge a premium for that non-accessible underinsured motorist coverage?

*Crutcher*, 2019 WL 12661166, at *4. This matter was stayed pending the New Mexico Supreme

Court's answer.  As explained below, the New Mexico Supreme Court answered this question

and Defendants moved to dismiss the claims in this case.

**LEGAL STANDARD**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the complaint "must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

555, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  Conclusory allegations of liability, without

supporting factual content, are insufficient.  "The allegations must be enough that, if assumed to

be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

Because this is a diversity case based on New Mexico law, this Court must ascertain and apply New Mexico law.  In doing so, the Court must either follow the decisions of the New Mexico Supreme Court, or attempt to predict what the New Mexico Supreme Court would do.  *Coll v. First Am. Title Ins. Co.,* 642 F.3d 876, 886 (10th Cir. 2011); *Federated Serv. Ins. Co. v. Martinez*, 529 F. App'x 954, 957 (10th Cir. 2013) (if no controlling state supreme court case, district court must predict how such court would rule based on intermediate appellate decisions, decisions of other states, federal decisions, and general weight and trend of authority).

The Court may consider the insurance policy as it is referred to in the complaint, it is central to the Plaintiffs' claims and the parties do not dispute its authenticity.  *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002), *cited in Brokers' Choice of America, Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017).  Therefore, the Court may consider the policy and need not convert to Fed. R. Civ. P. 56.

## DISCUSSION

Defendants move to dismiss all claims in this case.  The Court finds that Plaintiffs stated plausible claims upon which relief can be granted under each count.

**I.** *Crutcher v. Liberty Mut. Ins. Co.* **does not mandate dismissal of the claims in this case.**

Defendants assert that the Court should dismiss all claims in this case in light of the New Mexico Supreme Court's decision in *Crutcher v. Liberty Mut. Ins. Co.*, 2022-NMSC-001, 501 P.3d 433. Defendants appear to believe that *Crutcher* applies prospectively and grants them immunity from prior misrepresentation claims as to minimum limit underinsured motorist coverage.  The Court disagrees and concludes that *Crutcher* generally supports Plaintiffs' claims.

In *Crutcher*, United States District Judge Judith Herrera certified, and the New Mexico Supreme Court accepted, the following question:

> Under N.M. Stat. Ann. § 66-5-301, is underinsured motorist coverage on a policy that offers only minimum UM/UIM limits of $25,000 per person/$50,000 per accident illusory for an insured who sustains more than $25,000 in damages caused by a minimally insured tortfeasor because of the offset recognized in *Schmick v. State Farm Mutual Automobile Insurance Company*, and, if so, may insurers charge a premium for that non-accessible underinsured motorist coverage?

*Crutcher v. Liberty Mutual Insurance* Company, 1:18-cv-412, Doc. 53 at 8, Certification Order to the N.M. Supreme Ct. (D.N.M. Jan. 9, 2019) (the "certified question").

The New Mexico Supreme Court answered the question, concluding that (1) underinsured motorist coverage at the minimum limits was illusory in the sense that it was misleading to the average insured, but (2) the future sale of such insurance was lawfully permitted as long as the limitations of minimum limits underinsured motorist coverage were disclosed to insureds in the form of an "exclusion." *Crutcher v. Liberty Mut. Ins. Co.*, 2022-NMSC-001, ¶ 33. The *Crutcher* court concluded that "this type of policy is illusory in that it may mislead minimum UM/UIM policy holders to believe that they will receive underinsured motorist benefits, when in reality they may never receive such a benefit." *Id.*

In other words, *Crutcher* was consistent with this court's decision regarding a similar State Farm policy in *Schwartz v. State Farm* that "merely reading the offset provision in the policy would not inform an insured that the underinsured motorist coverage she purchased at the minimum level would in fact have little to no value." *Schwartz*, 1:18-cv-328, 2018 WL 4148434, at *6 (D.N.M. 2018). *Crutcher* cited to this language and reasoned that "the average insured driver likely has limited knowledge of insurance law and may not understand the details of the underinsurance law statute, Section 66-5-301(B), and the *Schmick* offset rule, and therefore may not understand that by choosing to purchase only the statutory minimum amount of UM/UIM

insurance, he or she will never receive the benefit of underinsured motorist coverage." *Crutcher v. Liberty Mut. Ins. Co.*, 2022-NMSC-001, ¶ 30.

In order to get around *Crutcher*'s holding, Defendants argue that *Crutcher* applies prospectively, *i.e,* that Plaintiffs cannot assert misrepresentation claims as to minimum limit underinsured motorist coverage. Defendants appear to believe that *Crutcher* grants them immunity from misrepresentation claims that arose prior to the issuance of the *Crutcher* opinion. The Court disagrees.

New Mexico applies "a presumption that a new rule adopted by a judicial decision in a civil case will operate retroactively." *Beavers,* 118 N.M. at 398, 881 P.2d at 1383. "The presumption of retroactive application can be overcome by an express declaration, in the case announcing the new rule, that the rule is intended to operate with selective prospectivity or pure prospectivity." *Jordan v. Allstate Ins. Co.*, 2010-NMSC-051, ¶ 26, 149 N.M. 162, 170, 245 P.3d 1214, 1222. If the New Mexico Supreme Court does not expressly state whether a new rule is intended to operate prospectively, a lower court may determine whether the presumption of retroactive application is overcome by applying three factors. *Jordan v. Allstate Ins. Co.*, 2010-NMSC-051, ¶ 26, 149 N.M. 162, 170, 245 P.3d 1214, 1222.

Defendant asserts that the word "hereafter" is an express statement by the New Mexico Supreme Court that it intended *Crutcher* to apply prospectively.   *Crutcher v. Liberty Mut. Ins. Co.*, 2022-NMSC-001, ¶ 32 ("Therefore, hereafter, the insurer shall bear the burden of disclosure to the policyholder that a purchase of the statutory minimum of UM/UIM insurance may come with the counterintuitive exclusion of UIM insurance if the insured is in an accident with a tortfeasor who carries minimum liability insurance. Consistent with the purpose and intent of the UIM statute, this disclosure will allow purchasers to make a fully informed decision when selecting

UM/UIM insurance coverage.").   The Court disagrees, as explained below, the New Mexico Supreme Court meant that "hereafter" it would not prohibit the issuance of underinsured motorist coverage if the policy contained a disclosure or exclusion explaining the limited value of minimum limit underinsured motorist coverage.

The use of the word "hereafter" must be interpreted in the context of the certified question the New Mexico Supreme Court was addressing.   The certified question asked in part whether insurance companies could lawfully charge a premium for underinsured motorist coverage at the minimum limit.   The New Mexico Supreme Court answered that question in the affirmative, as long as "every insurer … adequately disclose[s] the limitations of minimum limits UM/UIM policies in the form of an exclusion in its insurance policy. If the insurer provides adequate disclosure, it may lawfully charge a premium for such coverage." *Crutcher v. Liberty Mut. Ins. Co.*, 2022-NMSC-001, ¶ 33, 2021 WL 4520651.   The New Mexico Supreme Court concluded that it would not prohibit the issuance of minimum limit underinsured motorist coverage as long as an appropriate disclosure was provided.

Read in this context, the New Mexico Supreme Court meant that, "hereafter", minimum limit underinsured motorist coverage could be sold only with proper disclosure. *Crutcher v. Liberty Mut. Ins. Co.*, 2022-NMSC-001, ¶ 2 ("We conclude that this type of policy is illusory in that it may mislead minimum UM/UIM policyholders to believe that they will receive underinsured motorist benefits, when in reality they may never receive such a benefit. We therefore **hold that an insurer must adequately disclose** the limitations of minimum UM/UIM coverage— namely, that under the policies described in this case, a policyholder may never receive underinsurance motorist coverage. **Without this disclosure, an insurer may not charge a premium for minimum underinsurance coverage**.") (emphasis added).   Therefore, the word

8

"hereafter" was used in reference to the disclosure requirements for future minimum limit underinsured motorist coverage and did not concern misrepresentation claims which had already accrued.

Moreover, Defendants' argument ignores the reasoning of the rest of the *Crutcher* opinion. The New Mexico Supreme Court concluded that the minimum limit underinsured motorist coverage in *Crutcher* was illusory in the sense that it was misleading to the average insured. The New Mexico Supreme Court further reasoned that the statutory language which authorized the sale of minimum limit underinsured motorist coverage did not provide insurers immunity from misrepresentation claims. *Crutcher v. Liberty Mut. Ins. Co.*, 2022-NMSC-001, ¶ 26 ("[W]e find no merit in Defendant's argument that the language of the statute provides immunity from claims that it misrepresented the coverage available to consumers like Mr. Crutcher. Certainly, while the Legislature authorized the selling of premiums together, its intent was not to sanction the deception of those consumers in their selection of policies and coverage levels."). The *Crutcher* court also stated that "[w]e refuse to impose on the insured the obligation to be aware of and understand the consequences of New Mexico's UM/UIM statutory provisions, much less the offset rule derived by its technical language." *Crutcher v. Liberty Mut. Ins. Co.*, 2022-NMSC-001, ¶ 26. Defendants appear to believe that the New Mexico Supreme Court gave it immunity from misrepresentation claims as to its minimum limit underinsured motorist coverage. Such immunity would be inconsistent with the New Mexico Supreme Court's reasoning that the sale of minimum level underinsured motorist coverage was misleading to insureds and the statutory language did not provide insurers with immunity.

The Court also does not believe that the use of the word "hereafter" by itself rises to the level generally used by the New Mexico Supreme Court in announcing that a rule is prospective.

Generally, New Mexico has expressly stated when a case applies prospectively and explained with reasoned analysis why it applies prospectively. *Rodriguez v. Brand W. Dairy*, 2016-NMSC-029, ¶ 45-51, 378 P.3d 13, 32 (analyzing whether rule should apply prospectively and examining factors); *Marckstadt v. Lockheed Martin Corp.*, 2010-NMSC-001, ¶ 30, 147 N.M. 678, 688–89, 228 P.3d 462, 472–73 (analyzing factors and applying them); *Jordan v. Allstate Ins. Co.,* 2010-NMSC-051, ¶ 29 (same). The New Mexico Supreme Court did not do so in *Crutcher*.

Moreover, the New Mexico Supreme Court viewed its decision as flowing from its prior decision in *Weed Warrior*.

> This impossibility was identified and highlighted by this Court in *Weed Warrior* where it was determined that, "[i]f the tortfeasor carried the statutory minimum of liability insurance and the injured driver carried the statutory minimum of UM/UIM coverage, the injured driver would have no recourse for injuries suffered over the minimum amount of $25,000." *Weed Warrior*, 2010-NMSC-050, ¶ 10, 149 N.M. 157, 245 P.3d 1209. Stated differently, there will never be an instance in which there is an "underinsured motorist" if both parties in a car accident are minimally insured because the minimum limits, both being $25,000/$50,000, will always cancel each other out. *See* § 66-5-301(B); *see also Weed Warrior*, 2010-NMSC-050, ¶ 10, 149 N.M. 157, 245 P.3d 1209. Consequently, "[t]he injured driver, though in theory having purchased UIM coverage, would in fact have purchased only UM coverage—rendering the inclusion of 'UIM' in the statute superfluous." *Weed Warrior*, 2010-NMSC-050, ¶ 10, 149 N.M. 157, 245 P.3d 1209.

*Crutcher v. Liberty Mut. Ins. Co.*, 2022-NMSC-001, ¶ 21. Insurers were aware that minimum limit underinsured motorist coverage was "superfluous", but nevertheless sold such insurance without clearly disclosing its limitations. Because insurers were already informed of this issue, the Court doubts that the New Mexico Supreme Court meant to give insurers immunity from misrepresentation claims pre-*Crutcher*.

Therefore, the Court finds that the New Mexico Supreme Court did not expressly state that *Crutcher* applies prospectively as to misrepresentation claims.

Defendants appears to argue that the presumption of retroactivity is nevertheless overcome. The New Mexico Supreme Court uses three factors to determine whether the presumption of

retroactive application has been overcome. In considering these factors, the Court concludes the presumption of retroactive application has not been overcome as to misrepresentation claims.

Under the first factor, " 'the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed.' " *Marckstadt,* 2010–NMSC–001, ¶ 31, 147 N.M. 678, 228 P.3d 462 (quoting *Beavers,* 118 N.M. at 398, 881 P.2d at 1383). Here, the New Mexico Supreme Court clearly considered its *Crutcher* ruling as flowing from, and foreshadowed by, its ruling in *Weed Warrior. Crutcher v. Liberty Mut. Ins. Co.*, 2022-NMSC-001, ¶ 21 *Weed Warrior*, 2010-NMSC-050, ¶ 10, 149 N.M. 157, 245 P.3d 1209 ("[t]he injured driver, though in theory having purchased UIM coverage, would in fact have purchased only UM coverage—rendering the inclusion of 'UIM' in the statute superfluous."). Insurers were on notice of the issues in this case. Moreover, *Crutcher* expressly held that the plain language of the statute did not provide insurers immunity from misrepresentation claims. 2022-NMSC-001 at ¶ 26. Finally, the New Mexico Supreme Court applied well established misrepresentation law to the *Crutcher* case. Therefore, this factor weighs in favor of retroactivity.

Second, the Court must "weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." *Marckstadt,* 2010–NMSC–001, ¶ 31, 147 N.M. 678, 228 P.3d 462 (quoting *Beavers,* 118 N.M. at 398, 881 P.2d at 1383). For the same reasons as above, this factor weighs in favor of retroactive application. The *Crutcher* court was clear that although minimum limit underinsured coverage was statutorily authorized, nothing in the statute authorized insurers to misrepresent the extent of underinsured motorist coverage.

Third, this Court must consider "the inequity imposed by retroactive application, for where a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity." *Marckstadt,* 2010–NMSC–001, ¶ 31, 147 N.M. 678, 228 P.3d 462 (quoting *Beavers,* 118 N.M. at 398, 881 P.2d at 1383). Here, retroactive application is not inequitable to insurers. The New Mexico Supreme Court clearly believed it was inequitable for insureds to believe they purchased coverage when none was actually provided. The New Mexico Supreme Court has previously forced insurers to bear the cost of retroactive rules. For example, it has previously held that "[o]n balance, we deem it more equitable to let the financial detriments be borne by insurers, who were in a better position to ensure meaningful compliance with the law, than to let the burdens fall on non-expert insureds, who are the Legislature's intended beneficiaries." *Jordan v. Allstate Ins. Co.*, 2010-NMSC-051, ¶ 29, 149 N.M. 162, 171, 245 P.3d 1214, 1223.

The Court concludes that the presumption of retroactive application has not been overcome. In other word, *Crutcher* does not provide Defendants with immunity for misrepresentation claims which arose pre-*Crutcher*.

## II.   <u>Court declines to dismiss the negligence claim (Count I).</u>

Defendants move to dismiss the negligence claim. The Court declines to do so and concludes that Plaintiffs state a plausible negligence claim.

To assert a negligence claim, Plaintiffs must allege (1) a duty; (2) breach of that duty; (3) causation; and (4) damages. *Nowell v. Medtronic*, 372 F. Supp. 3d 1166, 1225 (D.N.M. 2019), *aff'd* 2021 WL 4979300 (10th Cir. 2021).

Plaintiffs allege that Defendants were negligent because they sold illusory or misleading underinsured motorist coverage without informing insureds that it had little value. As explained

above, the New Mexico Supreme Court clearly believed that underinsured motorist coverage sold at minimum limits was misleading to insureds. *Crutcher v. Liberty Mut. Ins. Co.*, 2022-NMSC-001, ¶ 26.

Plaintiffs allege that Defendants had a duty to ensure that they did not sell underinsured motorist coverage that was illusory or misleading. **Doc. 44 at 14.** They allege that "[s]ince the issuance of the New Mexico Supreme Court's opinion of *Schmick* in 1985 it was reasonably foreseeable that the underinsured coverage sold Freeman J. Palmer and Class Members was illusory and/or misleading and Defendants therefore materially misrepresented the terms and benefits of underinsured coverage, yet charged a premium for such illusory and/or misleading coverage." **Doc. 44 at 14.** They also allege that a reasonably prudent insurer would not offer and sell underinsured coverage that was illusory or misleading, and would not materially misrepresent the terms of underinsured coverage by properly informing its insureds of the coverage they were purchasing.

Defendants argue that Plaintiffs failed to plead that they had a duty to not mislead insureds about the value of underinsured motorist coverage. The Court disagrees. *Crutcher* clearly held that insurers may not mislead insureds about the nature of underinsured motorist coverage. *Crutcher v. Liberty Mut. Ins. Co.*, 2022-NMSC-001, ¶ 26, 501 P.3d 433, 439.

Defendants argue that the underinsured motorist coverage was statutorily authorized. The New Mexico Supreme Court held that underinsured motorist coverage was statutorily authorized and it would not prohibit the sale of such coverage with proper disclosure. However, it also held that this statutory authorization did not allow insurers to mislead insureds and did not provide insurers immunity from misrepresentation claims. *Crutcher v. Liberty Mut. Ins. Co.*, 2022-NMSC-001, ¶ 26, 501 P.3d 433, 439 ("we find no merit in Defendant's argument that the language of the

statute provides immunity from claims that it misrepresented the coverage available to consumers like Mr. Crutcher. Certainly, while the Legislature authorized the selling of premiums together, its intent was not to sanction the deception of those consumers in their selection of policies and coverage levels.").

Defendants allege that they adequately disclosed the *Schmick* offset in the policy, and therefore did not misrepresent the terms of underinsured motorist coverage.  The Court disagrees. "[R]eading the offset provision in the policy would not inform an insured that the underinsured motorist coverage she purchased at the minimum level would in fact have little to no value." *Schwartz v. State Farm Mut. Auto. Ins. Co*., No. 1:18-CV-00328-WJ-SCY, 2018 WL 4148434, at *6 (D.N.M. Aug. 30, 2018), *cited in Crutcher v. Liberty Mut. Ins. Co.*, 2022-NMSC-001, ¶ 30, 501 P.3d 433, 440 ("The average insured driver likely has limited knowledge of insurance law and may not understand the details of the underinsurance law statute, Section 66-5-301(B), and the *Schmick* offset rule, and therefore may not understand that by choosing to purchase only the statutory minimum amount of UM/UIM insurance, he or she will never receive the benefit of underinsured motorist coverage.").

Defendants appear to argue that Plaintiffs failed to plead detrimental reliance, that is, that they would have chosen different underinsured motorist coverage if Defendants had adequately explained the coverage. The Court concludes that Plaintiffs adequately pled causation, as they alleged that Defendants' policy made them reasonably believe they were purchasing underinsured motorist coverage.

Plaintiffs pled a plausible negligence claim.

**III.**    **Court declines to dismiss the New Mexico Unfair Trade Practices Act (UPA) claim (Count II).**

Plaintiffs allege that Defendants violated the New Mexico Unfair Trade Practices Act, NMSA 1978 § 57-12-2, including sections 57-12-2(D)(7),(D)(14), (D)(15), (D)(17), and 57-12-2-(E). "To state a claim under the UPA, a plaintiff must show that: (1) defendant made an oral or written statement that was either false or misleading; (2) the false or misleading representation was knowingly made in connection with the sale of goods or services; (3) the conduct complained of occurred in the regular course of defendant's business; and (4) the representation may, tends to, or does deceive or mislead any person." *Mulford v. Altria Grp., Inc.*, 242 F.R.D. 615, 621 (D.N.M. 2007), citing *Brooks v. Norwest Corp.,* 136 N.M. 599, 611, 103 P.3d 39 (2004); *see also Ashlock v. Sunwest Bank of Roswell, N.A.*, 107 N.M. 100, 101, 753 P.2d 346, 347 (1988).

Defendants argue that Plaintiffs failed to plead any misrepresentation. The Court rejects this argument, for the same reasons stated above. "The UPA ... imposes a duty to disclose material facts reasonably necessary to prevent any statements from being misleading." *Smoot v. Physicians Life Ins. Co.,* 2004–NMCA–027, ¶ 15, 87 P.3d 545, 549 (N.M. Ct. App. 2004), *quoted in Vilar v. Equifax Info. Servs., LLC*, 2014 WL 7474082, at *27 (D.N.M. 2014). Plaintiffs adequately pled that Defendants misrepresented their underinsured motorist coverage. Plaintiffs allege that Defendants failed to provide policies "containing sufficient information to properly inform a reasonably prudent person purchasing underinsured insurance" and the insureds "were under reasonable belief that such coverage existed and would protect them." **Doc. 44 at 16.** Plaintiffs allege that Defendants made false or misleading statements in connection with the sale of underinsured motorist insurance, which deceived insureds into believing that underinsured motorist coverage had value that it did not have.

The policy does not adequately explain to a reasonable insured that the underinsured motorist provision is effectively non-existent under circumstances where both the tortfeasor and

insured have minimum liability limits. *See Romero v. Dairyland Ins. Co.*, 1990-NMSC-111, ¶ 17, 111 N.M. 154, 159, 803 P.2d 243, 248 ("Given the realities of the automobile liability insurance business in which the unfamiliar terminology of a policy describes coverage under complex rights and obligations of personal injury and liability law, given an insured who is unsophisticated in business affairs, and given the public policy favoring insurance coverage for personal injury and liability arising from the operation of motor vehicles, we question whether …the duty to read one's insurance policy can have very general application. The exception is the more appropriate rule as this Court has stated in the past.").

Defendants also argue the UPA claim should be dismissed because the underinsured motorist coverage complied with statutory law.  As explained above, although Defendants were authorized to sell underinsured motorist coverage, they were not statutorily authorized to misrepresent such coverage.

NMSA § 57–12–7 provides:

Nothing in the Unfair Practices Act shall apply to actions or transactions expressly permitted under the laws administered by a regulatory body of New Mexico or the United States, but all actions or transactions forbidden by the regulatory body, and about which the regulatory body remains silent, are subject to the Unfair Practices Act.

Defendants argue that the offset provision in the policy is "expressly permitted" under NMSA § 66-5-301, and therefore any challenge to the validity of the offset provision is prohibited. *See Coll v. First American Title Insurance Company*, 642 F.3d 876, 900 (10th Cir. 2011).  Plaintiffs are not objecting to the offset provision.  Rather, they object to Defendants' misrepresentations or failure to disclose that the coverage at the minimum level was generally worthless.

Defendants have not pointed to anything from a regulatory body that expressly permits them to, as Plaintiffs allege, misrepresent the nature of the coverage or fail to disclose material information. *Quynh Truong v. Allstate Ins. Co.*, 2010-NMSC-009, ¶ 58, 147 N.M. 583, 597, 227

P.3d 73, 87, *citing Azar,* 2003–NMCA–062, ¶ 68, 133 N.M. 669, 68 P.3d 909 ("[T]he specific activity, *including the manner in which it was done,* must be expressly permitted to fall within [the] exemption."). The *Crutcher* court recognized that the statute did not permit insurers to mislead insureds or misrepresent the nature of underinsured motorist coverage. *Crutcher v. Liberty Mut. Ins. Co.*, 2022-NMSC-001, ¶ 26, 501 P.3d 433, 439.

Finally, Defendants argue that Plaintiffs failed to adequately plead detrimental reliance. The Court disagrees. "[T]he UPA does not require that the defendant's conduct actually deceive a consumer; it permits recovery even if the conduct only tends to deceive." *Smoot v. Physicians Life Ins. Co.,* 2004–NMCA–027, ¶ 21, 135 N.M. 265, 87 P.3d 545. "Accordingly, a claimant need not prove reliance upon a defendant's deceptive conduct in this context." *Lohman v. Daimler-Chrysler Corp.*, 2007-NMCA-100, ¶ 35, 142 N.M. 437, 444, 166 P.3d 1091, 1098.

## IV.   Court declines to dismiss Plaintiffs' Unfair Insurance Practices Act claim (Count III).

Plaintiffs allege that Defendants violated the New Mexico Unfair Insurance Practices Act ("UIPA"), NMSA 1978, §§ 59A–16–1 to 59A–16–30. "This act seeks to prohibit unfair or deceptive acts and practices in the insurance industry." *Brule v. Blue Cross & Blue Shield of New Mexico*, 455 F. App'x 836, 840 (10th Cir. 2011). Insurance companies "have a duty to disclose material facts about the policies they sell under the UIPA." *Id.*, *citing Azar v. Prudential Ins. Co. of Am.,* 133 N.M. 669, 68 P.3d 909, 930 (2003). Additionally, New Mexico has long recognized that "both the insurer and the insured have a duty not to misrepresent or withhold information material to an insurance contract." *Id., quoting Azar*, 68 P.3d at 930. "Thus, New Mexico law strongly encourages open and transparent dealings in the insurance context, particularly with regard to material information." *Brule*, 455 F. App'x at 840; *see, e.g.*, *Smoot v. Physicians Life Ins. Co.*, 2004-NMCA-027, ¶¶ 15–16, 135 N.M. 265, 87 P.3d 545 (concluding that "[t]he UPA

and the UIPA each imposes a duty to disclose material facts reasonably necessary to prevent any statements from being misleading" and noting the existence of "a common law duty to disclose the allegedly material facts").

Defendants argue that Plaintiffs failed to plead a plausible UIPA claim.  The Court disagrees.  Plaintiffs appear to assert that "Defendants misrepresent[ed] to insureds pertinent facts or policy provisions relating to coverages at issue." NMSA § 59A-16-20(A).   For the reasons stated above, Defendants failed to provide material information so that a reasonable insured would understand that the underinsured motorist coverage they were purchasing had little value. Therefore, Plaintiffs stated a plausible UIPA claim.

## V.     Court declines to dismiss Plaintiffs' reformation claim (Count IV).

Plaintiffs also seek to reform the insurance policy, alleging that Defendants misrepresented the coverage. "Under New Mexico law, a misrepresentation can be the basis for a party's avoidance of contractual obligations through rescission or reformation when the contract is based in material part on that misrepresentation." *Christy v. Travelers Indem. Co. of Am.*, 810 F.3d 1220, 1229 (10th Cir. 2016); *State ex rel. State Highway & Transp. Dep't,* 111 N.M. 383, 806 P.2d 32, 37 (1991). "In order for this to occur, the recipient of the misrepresentation must show that (1) there was a misrepresentation that was (2) material or fraudulent and which (3) induced the recipient to enter into the agreement and that (4) the recipient's reliance on the misrepresentation was justified." *Sisneros v. Citadel Broad. Co.,* 140 N.M. 266, 142 P.3d 34, 40 (App.2006).

Here, Plaintiffs plausibly pled that they were misled into a reasonable believing that they would receive underinsured motorist coverage.  The Court therefore declines to dismiss this claim.

## VI.     Court declines to dismiss good faith and fair dealing claim (Count V).

Plaintiffs allege the tort of breach of covenant of good faith and fair dealing, which arises from the special relationship between an insurer and insured.

"[E]very contract in New Mexico imposes the duty of good faith and fair dealing upon the parties in the performance and enforcement of the contract." *WXI/Z Sw. Malls v. Mueller*, 137 N.M. 343, 350 (Ct. App.) (citation omitted), *cert. denied*, 137 N.M. 454 (2005). "[U]nder the contract of insurance, there is an implied covenant of fair dealing which creates an obligation between the parties to act in good faith. New Mexico recognizes this duty of good faith between insurer and insured." *Ambassador Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 1984-NMSC-107, ¶ 11, 102 N.M. 28, 30, 690 P.2d 1022, 1024 (internal citation omitted); *see also Salas v. Mountain States Mut. Cas. Co.*, 145 N.M. 542, 546 (2009) ("[W]ith insurance contracts, as with every contract, there is an implied covenant of good faith and fair dealing that the insurer will not injure its policyholder's right to receive the full benefits of the contract.") (citation omitted). "Broadly stated, the covenant requires that neither party do anything which will deprive the other of the benefits of the agreement." *Watson Truck & Supply Co., Inc. v. Males,* 1990-NMSC-105, ¶ 12, 111 N.M. 57, 801 P.2d 639.

Claims for breach of good faith and fair dealing between an insured and insurer may sound in either contract or tort. Moreover, the tort recovery breach of the covenant of good faith and fair dealing is available where a special relationship exists, such as between insurer and insured. *Bourgeous*, 117 N.M. at 439, 872 P.2d at 857; *see also Heimann v. Kinder-Morgan CO2 Co.*, 140 N.M. 552, 558, 144 P.3d 111, 117 (Ct. App. 2006) ("The breach of good faith and fair dealing sounds in contract, at least when no "special relationship" such as that between an insured and insurer exists."); *City of Raton v. Arkansas River Power Auth.*, 611 F. Supp. 2d 1190, 1210 (D.N.M. 2008) ("New Mexico and Colorado do not allow a cause of action in tort for breach of

the covenant of good faith except in insurance contracts, or possibly contracts that are adhesive in nature.").

Here, Plaintiffs have plausibly alleged that there is a special relationship between the insurer and insured.  They also plausibly alleged that Defendants breached the covenant of good faith and fair dealing by (1) failing to properly inform Plaintiffs of the illusory or misleading coverage that was sold and (2) charging a premium for coverage that would not be provided. **Doc. 44 at 22.**

The Court declines to dismiss this claim.

## VII.   Court declines to dismiss the negligent misrepresentation claim (Count VI).

To state a negligent misrepresentation claim, Plaintiffs must show that "the offending party must have breached a duty of disclosure owed to the injured party, the injured party must have had a right to rely on the misinformation, and it must have sustained damages." *Ruiz v. Garcia*, 1993-NMSC-009, ¶ 26, 115 N.M. 269, 274–75, 850 P.2d 972, 977–78; *see also Robey v. Parnell*, 2017-NMCA-038, ¶ 31, 392 P.3d 642, 652 (negligent misrepresentation claim in New Mexico requires as follows: "(1) the defendant made a material representation to plaintiff, (2) the plaintiff relied upon the representation, (3) the defendant knew the representation was false or made it recklessly, and (4) the defendant intended to induce reliance by the plaintiff.").

Under New Mexico law, a negligent misrepresentation claim may sound between parties to a contract, or between an insurer and insured.  *See R.A. Peck, Inc. v. Liberty Fed. Sav. Bank*, 1988-NMCA-111, ¶ 17, 108 N.M. 84, 89, 766 P.2d 928, 933 (duty to disclose for negligent misrepresentation claim may arise in some contracts and in insurance relationship), *citing Macon County Livestock Mkt., Inc. v. Kentucky State Bank, Inc.,* 724 S.W.2d at 349; *Charter Servs., Inc. v. Principal Mut. Life Ins. Co.*, 1994-NMCA-007, ¶ 10, 117 N.M. 82, 86, 868 P.2d 1307, 1311

(negligent misrepresentation claim sounded between insurer and insured); *see also Keller v. A.O. Smith Harvestore Products, Inc.,* 819 P.2d 69 (Colo. 1991) (Under Colorado law, *"It is … clear that a contracting party's negligent misrepresentation of material facts prior to the execution of an agreement may provide the basis for an independent tort claim...."*), *cited in Colorado Visionary Acad. v. Medtronic, Inc.,* 397 F.3d 867, 871 (10th Cir. 2005) (interpreting Colorado law); *see also Maxey v. Quintana*, 1972-NMCA-069, ¶ 17, 84 N.M. 38, 42, 499 P.2d 356, 360 (determining that negligent misrepresentation is a claim under New Mexico law, under circumstances where there appeared to be contractual relationship).  In many cases where a negligent misrepresentation is asserted, the parties are likely parties to a contract.  *See* Restatement (Second) of Torts § 552(g) (1977) (person may elect to sue either under negligent misrepresentation claim or under contract); *see also* Restatement (Second) of Torts § 552(1) ("One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."), *quoted in Barrington Reinsurance Ltd. v. Fid. Natl. Title Ins. Co.*, 2007-NMCA-147, ¶ 17, 143 N.M. 31, 35, 172 P.3d 168, 172 (negligent representation claim sounded even where negligence claim failed).

Here, Plaintiffs have plausibly pled a negligent misrepresentation claim, for the reasons stated above.  Defendants allegedly misled the Plaintiffs into believing they would receive underinsured motorist coverage when they would not.  The Court declines to dismiss this claim.

**VIII.**   **Court declines to dismiss declaratory judgment claim (Count VII).**

Defendants argue that the declaratory judgment claim should be dismissed because (1) it is duplicative of their reformation claim and (2) is moot following *Crutcher*.

The Court disagrees.  The declaratory judgment claim is not entirely duplicative of the reformation claim.

Moreover, the Court has not dismissed any of the substantive claims under the complaint, and declaratory relief is not moot following *Crutcher*, as Defendants appear to continue to contest the matters in this case.  *Crutcher* delt with separate policies issued by Liberty Mutual, and Defendants assert that their policies are different.  Finally, as explained above, *Crutcher* does not provide immunity for the misrepresentation claims in this case.

### IX.    <u>Court declines to dismiss request for injunctive relief.</u>

Defendants argue that the injunctive relief claim is now moot after the *Crutcher* court ordered insurers to disclose the limitations of minimum limit underinsured motorist coverage.  The complaint does not allege whether Defendants have complied with that directive.  At the Rule 12(b)(6) stage, the Court may not take evidence to determine whether Defendant is in fact remedying the misrepresentations.  Defendants argue in their reply brief that Plaintiffs concede the request for injunction is moot.  The Court disagrees.  Therefore, the Court declines to dismiss Plaintiff's request for injunctive relief.

### X.    <u>Joint Venture</u>.

In their reply brief Defendants assert that State Farm Fire and Casualty Company and State Farm General Insurance Company should be dismissed from this action because Plaintiffs failed to plausibly plead a joint venture.

The Court will not entertain this argument as it was raised for the first time in a reply brief.

**CONCLUSION**

Plaintiffs state plausible claims upon which relief can be granted and the Court declines to dismiss any claims under Fed. R. Civ. P. 12(b)(6).

**IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (**Doc. 46**) is hereby **DENIED** for reasons described in this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

**KEA W. RIGGS**
**UNITED STATES DISTRICT JUDGE**